[Civ. No. 12482. Third Dist. Dec. 30, 1971.]

ERNEST G. ERICKSON et al., Plaintiffs and Respondents, v.
QUEEN VALLEY RANCH CO., INC., et al., Defendants and Appellants.

## COUNSEL

Cameron & Foushee, Joseph F. McDonald and F. Morton Cameron for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard and Fred Girard for Plaintiffs and Respondents.

## OPINION

**FRIEDMAN, Acting P. J.**—Plaintiffs own 240 acres of ranch lands in Mono County. They seek to quiet title to the water of Morris Creek. In the early part of the century, plaintiffs' properties were owned by John Pedro, who established an appropriative right to the entire flow of Morris Creek. The primary issue is whether, before plaintiffs acquired the property, nonuse of the water had caused a complete or partial forfeiture of the appropriative right.

The headwaters of the creek are located in Nevada. In a state of nature the creek flowed into California, although John Pedro's ranch was not riparian to it. Commencing in 1902, Pedro acquired appropriative rights and built a diversion dam, which is located about one-half mile east of the present California-Nevada state line. From the dam he built a stone-lined diversion ditch, which conducted the entire flow of the creek by gravity to his ranch, about 2½ miles distant. The ditch was about 2 feet deep and 2 feet wide. John Pedro died in 1916. The ranch was held by his widow and three sons until 1966, when it was sold to plaintiffs.

Some years after John Pedro's death, and over the protests of the Pedro family, defendants were issued appropriative permits by the Nevada state authorities, allowing them to transport up to five second/feet of Morris Creek by pipeline to irrigate Nevada property. The permits were expressly subordinated to any preexisting rights found by a court. At one point a contractor employed by defendants stopped the flow of water into the diversion ditch. Plaintiffs' protests caused partial restoration of the flow. Plaintiffs then instituted this action.

After considering evidence, the trial court found that John Pedro and his successors had continually put to beneficial use for irrigation and domestic purposes all the water of Morris Creek diverted to the land; that the Pedro family never abandoned or forfeited any right to the water; that, except for occasional storm runoffs, there is no surplus or unappropriated water; that evapotranspiration losses occurred during the 2½ miles of flow but these losses were not unreasonable and were similar to the custom or practice prevailing in the locality. The court entered a judgment quieting the title to plaintiffs as appropriative owners of all the water of Morris Creek diverted at the upper end of the ditch.

■ Generally, an appropriative water right is forfeited by force of statute and reverts to the public if the appropriator fails to put it to beneficial use during a three-year period. (Wat. Code, §§ 1240-1241.) Since John Pedro's appropriative right had been established before 1914, forfeiture required nonuse for five rather than three years. (*Wright* v. *Best,* 19 Cal.2d 368, 380 [121 P.2d 702]; 1 Rogers & Nichols, Water for California, pp. 515-516; Hutchins, The California Law of Water Rights, pp. 293-296.) A statutory forfeiture may be entire or only partial. (*Smith* v. *Hawkins,* 120 Cal. 86, 88 [52 P. 139].) Defendants, who base their claim on the forfeiture of a preexisting right, had the burden of proving facts constituting a forfeiture. (*Ward* v. *City of Monrovia,* 16 Cal.2d 815, 820 [108 P.2d 425]; *Lema* v. *Ferrari,* 27 Cal.App.2d 65, 73 [80 P.2d 157].)

■ As defendants view the evidence, there was no beneficial use of the water reaching the Pedro ranch during the nine years from 1956 to 1965. Defendants charge the trial court with error in finding uninterrupted beneficial use. ■ In determining whether the finding is supported by the evidence, the reviewing court adheres to the familiar substantial evidence rule. (*Chowchilla Farms, Inc.* v. *Martin,* 219 Cal. 1, 9-10 [25 P.2d 435].) Disregarding conflicts in the evidence, the court starts with the presumption that the record contains evidence to support every finding and draws all reasonable inferences necessary to support the findings. (*Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Clark* v. *Gibbons,* 66 Cal.2d 399, 402 [58 Cal.Rptr. 125, 426 P.2d 525].)

■ We summarize the evidence supporting the trial court's finding of continued beneficial use: Until his death in 1916 John Pedro lived on the ranch with his wife and children. He had established 15 acres of alfalfa, a family orchard and vegetable garden, all irrigated by the creek water. Additional water was used for the household and to support a few head of cattle. After 1924 the water reaching the Pedro ranch diminished to a point where it would irrigate only 6 acres of alfalfa. One factor in the diminution was

the growth of vegetation in and around the 2½ miles of ditch. The ditch nevertheless was regularly cleaned.

During the 1920s and 1930s John Pedro's widow and three sons lived on the ranch, continuing to use the water for domestic needs, for watering livestock and for irrigation. One son, Charles, entered the armed forces in 1942 but the other two brothers and their families continued to live on the ranch. Although the alfalfa died down, about 6 acres was replanted in 1945. The latter too died back, but the water was used to irrigate a meadow which supported a few milk cows and 20 head of sheep. Charles returned in 1945 and lived on the ranch until late 1947. Between 1947 and 1965 Charles came to the ranch on weekends. One brother moved off the ranch in 1955 but the other continued to live there with his family. The brothers planted a garden each year and kept some sheep, poultry and rabbits. During this period all the water of Morris Creek was diverted into the ditch. The Pedro brothers occasionally inspected and cleaned the ditch. Domestic use, watering of poultry and livestock occurred throughout the year; irrigation of the family orchard and several acres of pasture were additional uses during the dry season. In 1965 Charles Pedro moved back to the ranch and replanted alfalfa in the pasture area. In 1966 plaintiffs bought the property.

Defendants point out that the agricultural activities on the property were essentially noncommercial and aimed only at family use. Agriculture is a beneficial use of water even if it does not result in profit. (*Nelson* v. *Anderson-Cottonwood Irr. Dist.*, 51 Cal.App. 92, 96 [196 P. 292].) Domestic use, irrigation of pasture, irrigation of a garden and fruit trees and watering of livestock, are all beneficial uses of water. (See cases collected 1 Rogers & Nichols, *op. cit.*, pp. 262-263.) Watering of barnyard animals not kept for profit is a beneficial domestic use. (*Deetz* v. *Carter*, 232 Cal.App.2d 851, 856 [43 Cal.Rptr. 321].) The evidence fully supports the trial court finding of continual beneficial use of that portion of the water of Morris Creek reaching the Pedro ranch.

Defendants charge that diligence in putting the water to beneficial use is a material issue upon which the trial court failed to make a finding. They cite Water Code section 1202, which designates as unappropriated water: "(b) All water appropriated prior to December 19, 1914, which has not been in process, from the date of the initial act of appropriation, of being put, with due diligence in proportion to the magnitude of the work necessary properly to utilize it for the purpose of the appropriation, or which has not been put, or which has ceased to be put to some useful or beneficial purpose."

Section 1202, subdivision (b), is a codification of a provision of the Water Commission Act of 1914, which required diligent completion of di-

version works by would-be appropriators who had taken the initial steps toward establishing appropriative rights under the pre-1914 law. (See 1 Rogers & Nichols, *op. cit.,* p. 280.) It postulates "diligence" as a condition to completion of the appropriative claim but not as a condition to retention of the right by one who, like John Pedro, had perfected his claim.

█ The evidence of continued beneficial use at the Pedro ranch does not support a finding of continued beneficial use at the point of diversion. Here we find reversible error. Plaintiffs' existing appropriative right is measured not by the flow originally appropriated and not by the capacity of the diversion ditch, but by the amount of water put to beneficial use at the delivery point plus such additional flow as is reasonably necessary to deliver it. █ The principle is set out in *Smith* v. *Hawkins, supra,* 120 Cal. at page 88: "[N]o matter how great in extent the original quantity may have been, an appropriator can hold, as against one subsequent in right, only the maximum quantity of water which he shall have devoted to a beneficial use at some time within the period by which his right would otherwise be barred for nonuser. And this principle has been more explicitly declared in the recent case of *Senior* v. *Anderson,* 115 Cal. 496 [47 P. 454], where it is held that an appropriation of water by the owner of land by means of a ditch is not measured by the capacity of the ditch through which the appropriation is made, but is limited to such quantity, not exceeding the capacity of the ditch, as the appropriator may put to a useful purpose." (See additional cases cited, 1 Rogers & Nichols, *op. cit.,* pp. 285-288.)

█ An appropriator cannot be compelled to divert according to the most scientific methods; he is entitled to make a reasonable use of the water according to the general custom of the locality, so long as the custom does not involve unnecessary waste. *(Tulare Dist.* v. *Lindsay-Strathmore Dist.,* 3 Cal.2d 489, 547 [45 P.2d 972].) █ The trial court's finding included a formulary statement designed to satisfy this rule, declaring that evapotranspiration losses in the course of the 2½ miles of conveyance by ditch "are not unreasonable and are similar to the custom or practice of this locality."

According to measurements taken in August 1963, the Pedro ditch contained a flow of 2.585 cubic feet per second at a point 100 yards below the diversion dam, while only 0.424 cubic feet per second was delivered at the Pedro ranch. The major part, that is, five-sixths of the flow, was lost en route to the point of use. Although the evidence includes no later flow data, it supplies no ground for believing that the transmission loss is any less now than it was in 1963. Inferably, absorption into the sandy desert soil is a major loss factor, evaporation a relatively minor factor.

Article XIV, section 3, of the California Constitution declares the state's

policy to achieve maximum beneficial use of water and prevention of waste, unreasonable use and unreasonable method of use. ■ The constitutional policy applies to every water right and every method of diversion. (*Peabody* v. *City of Vallejo*, 2 Cal.2d 351, 367 [40 P.2d 486]; 1 Rogers & Nichols, *op. cit.*, p. 499.) It imposes upon trial courts an affirmative duty to fashion a decree which will simultaneously protect the paramount right of the established appropriator and prevent waste. (*City of Lodi* v. *East Bay Mun. Utility Dist.*, 7 Cal.2d 316, 339-340 [60 P.2d 439].)

■ The findings and decree in this case fail to accomplish the second of these objectives. By holding that transmission losses amounting to five-sixths of the flow are reasonable and consistent with local custom, the court effectually placed the seal of judicial approval on what appears to be an inefficient and wasteful means of transmission. Such a holding is not in conformity with the demands of article XIV, section 3.

It is doubtless true that water in the arid desert areas of Mono County is frequently transported by open ditch; also, that much of the flow may be lost by absorption and evaporation. Moreover, an appropriator who has for many years conveyed water by earth ditches may not be compelled at his own expense to install impervious conduit. (*Tulare Dist.* v. *Lindsay-Strathmore Dist., supra*, 3 Cal.2d at pp. 572-573.) Nevertheless, an excessive diversion of water for any purpose is not a diversion for beneficial use. (*Tulare Dist.* v. *Lindsay-Strathmore Dist., supra*, 3 Cal.2d at p. 547.) Water of Morris Creek which is presently wasted becomes excess water available for appropriation. (See Wat. Code, §§ 1201, 1202, subd. (c), 1241; *Stevinson Water Dist.* v. *Roduner*, 36 Cal.2d 264, 270 [223 P.2d 209]; *Meridian, Ltd.* v. *San Francisco*, 13 Cal.2d 424, 445-446 [90 P.2d 537, 91 P.2d 105].) Another would-be appropriator may be willing to invest in a more efficient conveyance system in order to capture and use the water now lost en route. An analogy may be drawn between the later appropriator and the owner of land who may intercept and use water originating on his land when it is wasted by a prior appropriator. (*Stevens* v. *Oakdale Irr. Dist.*, 13 Cal.2d 343, 348-349 [90 P.2d 58].)

When the issue involves a possible surplus available to a later appropriator over and above the needs of the prior appropriator, a generalized finding of "reasonableness" at the point of diversion is inadequate. (See *Trussell* v. *City of San Diego*, 172 Cal.App.2d 593, 606-609 [343 P.2d 65].) A finding of reasonableness which cloaks a transmission loss amounting to five-sixths of the diverted flow fails to respond to the demands of constitutional policy. That policy required the trial court to inquire and make findings in terms of the flow taken at the point of diversion; the

flow delivered at the point of use; the flow, if any, made available to the later appropriator by a physical solution permitting maintenance of the flow delivered to the prior appropriator; and finally, to consider the retention of jurisdiction in order to accomplish maximum utilization of the water. (See *Allen* v. *California Water & Tel. Co.*, 29 Cal.2d 466, 488 [176 P.2d 8].) In the light of constitutional policy, there were material issues on which the trial court did not find. The evidence discloses a possibility of partial forfeiture. Specific findings of this sort will confirm or negate that posibility. Defendants requested such specific findings. Rejection of the request was reversible error.

Some enlightenment *dehors* the record turned up at oral argument. The attorneys were in apparent general agreement on the unrecorded circumstances; these circumstances do not affect our decision to reverse; their consideration may assist the trial court and parties. It appears that the 2½ miles of ditch traverses land under the jurisdiction of the United States Forest Service. Over the years leakage from the ditch has generated vegetation. The water and vegetation support a population of deer and quail. Plaintiffs sought permission to replace the ditch with a pipeline but the Forest Service declined for the sake of the animal and bird life. As we pointed out earlier, plaintiffs are under no legal compulsion to install a pipe. (*Tulare Dist.* v. *Lindsay-Strathmore Dist., supra.*) Defendants, on the other hand, are under some economic compulsion, for their ability to segregate a surplus flow available for appropriation may depend upon a physical means of preventing transmission loss. Defendants may be able and willing to work out a solution with the Forest Service. Whether the federal agency has any proprietary interest in the water leakage is outside the present scope of this lawsuit. If a three-way extrajudicial solution is impossible, a three-way lawsuit in an appropriate forum may be necessary to resolve the problem. As between the present parties, in any event, the trial court is obliged to fashion findings and a judgment consistent with the constitutional policy of water conservation.

Judgment reversed.

Janes, J., and Pierce, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.