**GRASON ELECTRIC COMPANY, a California Corporation, Luppen and Hawley, Inc., a California Corporation, M and M Electric Company, a California Corporation, et al., Plaintiffs/Appellees,**

v.

**SACRAMENTO MUNICIPAL UTILITY DISTRICT, Defendant/Appellant.**

No. 84–2395.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1985.

Decided Sept. 4, 1985.

834

Robert A. Susk (argued), Leslie J. Mann, Law Offices of Robert A. Susk, G. Joseph Bertain, Jr., San Francisco, Cal., for plaintiffs/appellees.

J. Keith McKeag, D. Steven Blake, Thomas N. Cooper, Downey, Brand, Seymour, & Rohwer, Sacramento, Cal., Ronald F. Lipp, Cloverdale, Cal., for defendant/appellant.

Before POOLE, NELSON and BRUNETTI, Circuit Judges.

NELSON, Circuit Judge:

Sacramento Municipal Utility District ("SMUD") appeals from the district court's grant of partial summary judgment striking its state action immunity defense and denial of its summary judgment motion seeking dismissal of the action on the ground of state action immunity, in this antitrust action brought by thirteen electrical contractors ("plaintiffs"). Especially in light of the Supreme Court's recent decision in *Town of Hallie v. City of Eau Claire,* — U.S. ——, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), we reverse the grant of partial summary judgment and the denial of SMUD's summary judgment motion. Because we find that SMUD is entitled, as a matter of law, to state action immunity, we remand to the district court with instructions to dismiss the action on that ground.

## ISSUES PRESENTED

The broad issue is whether the district court erred in striking SMUD's state action immunity defense and in refusing to dismiss plaintiffs' action on the ground of state action immunity.

While the parties differ somewhat on specific formulation, both agree that final resolution of the broader issue raised depends on the resolution of two "sub-issues:" (1) whether the statutory scheme here evidences a sufficiently clear and affirmative state policy to displace competi-

tion, and (2) whether a municipality must show "active state supervision" of its anticompetitive conduct.

## FACTUAL AND PROCEDURAL BACKGROUND

SMUD is a public entity created pursuant to state statute and is virtually the exclusive supplier of retail electricity in and around Sacramento, California. Plaintiffs are thirteen electrical contractors who do business in the same geographical area. Plaintiffs construct electrical distribution systems on private property, as well as street and outdoor lighting systems.

The plaintiffs brought an antitrust action against SMUD, alleging that SMUD violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, by monopolizing the markets for electrical distribution systems on private property and for street and outdoor lighting systems. Plaintiffs do not appear to allege that SMUD's monopoly in the electrical energy market is illegal, but rather that it used that monopoly to gain an anticompetitive advantage in two related markets.

The procedural history of the motions involved in this appeal is somewhat convoluted. SMUD filed a motion for judgment on the pleadings on its state-action immunity defense on June 12, 1981. On the same day, plaintiffs filed a motion for summary judgment, in the alternative a motion for partial summary judgment to strike SMUD's defenses ("plaintiffs' motion to strike"). The district court, Hon. Raul Ramirez, denied SMUD's motion for judgment on the pleadings and certified his order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *Grason Electric Co. v. Sacramento Municipal Utility District,* 526 F.Supp. 276, 280 (E.D.Cal.1981). Judge Ramirez did not rule on the plaintiffs' motion to strike, instead ordering a three-month continuance. *Id.* at 281.

Before plaintiffs' motion could be heard, however, Judge Ramirez recused himself and the matter was reassigned to the Honorable Lawrence K. Karlton. In September, 1983, Judge Karlton issued an order denying plaintiffs' motion for summary judgment on issues not here on appeal. *Grason Electric Co. v. Sacramento Municipal Utility District,* 571 F.Supp. 1504 (E.D.Cal.1983). Plaintiffs' motion to strike remained pending. Judge Karlton authorized SMUD to file a cross-motion for summary judgment on the state action defense. On April 30, 1984, Judge Karlton issued an order granting plaintiffs' motion to strike and denying SMUD's cross-motion. SMUD sought section 1292(b) certification, and the court filed the required certification statement on July 17, 1984. SMUD petitioned this court on July 23, 1984, for permission to appeal, and on August 30, 1984, permission was granted.

## STANDARD OF REVIEW

█ The district court's determination of the applicability of state action immunity is a question of law subject to *de novo* review. *Golden State Transit Corp. v. City of Los Angeles,* 726 F.2d 1430, 1432 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). The district court's interpretation of state law is reviewed *de novo. In re McLinn,* 739 F.2d 1395, 1397–1403 (9th Cir.1984) (en banc).

We also review the district court's grant or denial of a summary judgment *de novo. See, e.g., Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1482 (9th Cir.1985). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Arizona Laborers Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.,* 753 F.2d 1512, 1515 (9th Cir. 1985); Fed.R.Civ.P. 56(c).

## DISCUSSION

I. CLEARLY ARTICULATED STATE POLICY REQUIREMENT

A. *Introduction: the legal test*

This Circuit has stated that

to qualify for *Parker v. Brown* [317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), *i.e.,* state action] immunity, a city need only

show that it is acting pursuant to a clearly articulated and affirmatively expressed state policy to displace competition, and that the legislature contemplated that that policy might be implemented by the kind of actions challenged as anticompetitive.

*Tom Hudson & Associates, Inc. v. City of Chula Vista,* 746 F.2d 1370, 1373 (9th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3503, 87 L.Ed.2d 634 (1985). *Accord, Preferred Communications, Inc. v. City of Los Angeles,* 754 F.2d 1396, 1411–12 (9th Cir.1985); *Lorrie's Travel & Tours, Inc. v. SFO Airporter, Inc.,* 753 F.2d 790, 793 (9th Cir.1985); *Springs Ambulance Service v. City of Rancho Mirage,* 745 F.2d 1270 (9th Cir.1984).

This test was most recently used by the Supreme Court in *Town of Hallie v. City of Eau Claire,* —— U.S. ——, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). In *Town of Hallie,* the Court concluded that the relevant Wisconsin statutes

evidence a "clearly articulated and affirmatively expressed" state policy to displace competition with regulation in the area of municipal provision of sewerage services. These statutory provisions plainly show that "'the legislature contemplated the kind of action complained of.'" *City of Lafayette [v. Louisiana Power & Light Co.,* 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978)] (quoting the decision of the Court of Appeals, 532 F.2d 431, 434 [ (5th Cir. 1976) ]). This is sufficient to satisfy the clear articulation requirement of the state action test.

105 S.Ct. at 1719 (footnote omitted).

B. *The district court's flawed legal analysis*

An analysis of the district court's reasoning is somewhat difficult here because Judge Karlton provided only a brief explanation of his thoughts concerning the state action immunity issue, and referred only in passing to Judge Ramirez, statements on the same issue. In his ruling from the bench, Judge Karlton said that "although this Court's analysis would be somewhat different from that undertaken by Judge Ramirez, if I had to start all over again, I am certain that the result articulated by Judge Ramirez is the right result.... The Court is satisfied that under the law of the case,[1] it would be necessary to grant summary judgment [for plaintiffs]." Before he recused himself, Judge Ramirez found that the state action immunity defense was inapplicable because the statutes were permissive rather than compulsory, 526 F.Supp. at 278–79, and because the requisite state policy cannot be shown by inference, *id.* at 280.

■ Judge Ramirez' two stated rationales are legally incorrect: the statutes need *not* be compulsory, and state policy may be inferred from the "broad authority to regulate," 105 S.Ct. at 1718. The Court in *Town of Hallie* found sufficiently "clear articulation" where the state statutes "clearly contemplate that a city *may* engage in anticompetitive conduct." *Id.* (emphasis added). Writing for a unanimous Court, Justice Powell stated that

[i]t is not necessary ... for the state legislature to have stated explicitly that it expected the City to engage in conduct that would have anticompetitive effects. Applying the analysis of *City of Lafayette [v. Louisiana Power & Light Co].,* [435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978),] it is sufficient that the statutes authorized the City to provide sewage services and also to determine the areas to be served. We think it is clear that anticompetitive effects logically would result from this broad authority to regulate.

*Id.* The Court thus made clear that the state statutes need not "compel" anticompetitive conduct; rather, said the Court, "although compulsion affirmatively expressed may be the best evidence of state

---

1. The "law of the case" doctrine "ordinarily precludes a court from reexamining an issue previously decided by the same court in the same case." *Russell v. C.I.R.,* 678 F.2d 782, 785 (9th Cir.1982).

policy, it is by no means a prerequisite to a finding that a municipality acted pursuant to a clearly articulated state policy." *Id.* at 1720.

C. *Analysis of state statutory scheme*

The constitutional authority for municipalities to create public utilities is found in the California Constitution, article XI, section 9, which provides that "[a] municipal corporation may establish, purchase, and operate public works to furnish its inhabitants with light, water, power, heat, transportation or means of communication." SMUD's statutory authority derives from several sections of the California Public Utilities Code. Section 12801 authorizes SMUD to

> acquire, construct, own, operate, control or use ... works or part of works for supplying the inhabitants of the district ... with light [and] power, ... and may do all things necessary or convenient to the full exercise of the powers herein granted.

Cal.Pub.Util.Code § 12801 (West 1984). SMUD is further empowered under section 12721 to "do all acts necessary and convenient for the full exercise of the powers granted" by statute, including the power to make contracts and to hire labor. Other statutes authorize SMUD to borrow money and sell bonds (section 13091)[2]; to exercise the right of eminent domain (section 12703)[3]; to tax (section 12892)[4]; to annex territory into the district's boundaries (section 13651)[5]; and to spend money for certain types of advertising (section 12819)[6]. SMUD is also authorized to fix its rates below cost, which appears to represent, as SMUD argues, a clear legislative imprimatur for displacement of competition. Section 12809 provides that SMUD "is not required to fix a rate which in its opinion is unreasonably high, nor to cover by rates large expenditures and the interest thereon

---

**2.** Calif.Pub.Util.Code section 13091 (West 1984) provides:

> A district may borrow money from time to time for the purpose of constructing, reconstructing, replacing, extending or improving its system for supplying the district and its inhabitants with electric energy, and may issue and sell bonds to evidence the indebtedness created by such borrowing. No such money may be used:
> (1) For constructing or improving works located outside the district boundaries which exist on the date this Chapter ... is enacted.
> (2) For acquiring any property owned by a public utility.
> (3) For constructing or improving works used, or to be used, in whole or in part either for the receipt, transmission and delivery of electric energy for any supplier of electric power or for the exchange of electric power with any person or entity. This provision shall not prevent the district from using such money for the purposes set forth in the initial sentence of this section.
> Such bonds shall not be issued for a term in excess of 20 years after the date of such bonds; provided, that this sentence shall not limit the power of a district to refund such bonds.

**3.** Calif.Pub.Util.Code section 12703 (West 1984) provides that "[a] district may exercise the right of eminent domain to take any property necessary or convenient to the exercise of the powers granted in this division."

**4.** Calif.Pub.Util.Code section 12892 (West 1984) provides:

> If, in the opinion of the board, the revenues will not be sufficient for any and all lawful purposes the board shall levy a tax for such purpose or purposes and fix the amount of money necessary to be raised therefor by taxation.

**5.** Calif.Pub.Util.Code section 13651 (West 1984) provides:

> Any public agency or portion thereof or unincorporated territory within the boundaries of a district ... not included within the boundaries of a special district may be annexed thereto in the manner provided in this article.

**6.** Calif.Pub.Util.Code section 12819 (West 1984) provides:

> (a) Every district furnishing light, heat, or power shall expend no funds for advertising when such advertising encourages increased consumption of such services or commodities.
> (b) Nothing in this section shall prohibit a district furnishing light, heat, or power from expending funds for advertising which encourages the more efficient operation of the facilities, works, or utilities of the district, or for advertising which encourages the more efficient use of light, heat, or power, the conservation of energy or natural resources, or presents accurate information on the economical purchase, maintenance, or use of any appliance or device using light, heat, or power.

required for future needs and developments." Cal.Pub.Util.Code § 12809 (West 1984).

These state statutes appear to represent at least as broad a grant of authority to regulate as those involved in *Town of Hallie.* There, the Court found sufficiently "clear articulation" in a statutory scheme which authorized the city to provide sewage services. *See* 105 S.Ct. at 1717–19. We recently reaffirmed our view that "[n]arrowly drawn, explicit delegation is not required." *Preferred Communications,* 754 F.2d at 1413. Also, as SMUD points out, this Circuit has applied state action immunity in cases involving less comprehensive regulatory schemes than that which is involved here. *See Golden State Transit,* 726 F.2d 1430 (statute providing for state regulation of taxicabs if cities did not regulate held to provide basis for municipality's immunity); *Springs Ambulance Service,* 745 F.2d 1270 (statute providing that "city may contract for ambulance service to serve the residents of the city as convenience requires" held to evidence sufficiently clear articulation).

■ Thus, we conclude that the statutes here evidence a clearly articulated and affirmatively expressed state policy to displace competition with regulation in the area of electrical power and light. *See Town of Hallie,* 105 S.Ct. at 1721. These statutes "clearly contemplate that [SMUD] may engage in anticompetitive conduct" such as that alleged by the plaintiffs; it is apparent "that anticompetitive effects logically would result from this broad authority to regulate." *Id.* at 1718.

### D. *Evidence of legislative action*

To bolster its position, SMUD recounts the histories of four unsuccessful private attempts to amend the statutes to allow competition in the areas which are the subject of this action. In the sixties and seventies, the legislature had before it bills which would have allowed private contractors to construct outdoor lighting and underground electrical systems, but in each instance the legislature declined to change the status quo. While such information is not conclusive, of course, it certainly supports the assertion that the legislature was made aware of and declined to interfere with SMUD's anticompetitive conduct. Despite the failure of these earlier efforts at changing the law, we believe that the legislature, not the courts, remains the proper forum in which to urge revision in SMUD's statutory grant of power.

## II. ACTIVE STATE SUPERVISION

■ *Town of Hallie* resolves the issue of whether SMUD must show "active state supervision" in order for the state action immunity defense to apply. The Court held that the state need not actively supervise the alleged anticompetitive conduct when the actor is a municipality. 105 S.Ct. at 1720–21. *Accord, Preferred Communications,* 754 F.2d at 1412. SMUD has been held to be a "municipal district" performing a "governmental function." *Pacific Gas & Electric Co. v. Sacramento Municipal Utility District,* 92 F.2d 365, 369 (9th Cir.1937), *cert. denied,* 303 U.S. 640, 58 S.Ct. 610, 82 L.Ed. 1100 (1938). Even prior to *Town of Hallie,* this Circuit had held that active state supervision is not required when the challenged activity is within a municipality's traditional function. *See Golden State Transit Corp.,* 726 F.2d at 1434.

## CONCLUSION

Our analysis of the state statutory scheme shows that SMUD is acting pursuant to a clearly articulated and affirmatively expressed state policy to displace competition, and that the legislature contemplated that the policy might be implemented by the kind of actions challenged as anticompetitive. Therefore, SMUD is immune from antitrust liability based on the state action immunity doctrine, and the district court erred in holding to the contrary. The district court's grant of partial summary judgment for plaintiffs, and its denial of SMUD's summary judgment motion are therefore reversed. The case is remanded

to the district court with instructions to dismiss the action.

REVERSED AND REMANDED.