**KERN–TULARE WATER DISTRICT,**
**Plaintiff-Appellee,**

v.

**CITY OF BAKERSFIELD,**
**Defendant-Appellant.**

No. 86–2324.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1987.

Decided Sept. 18, 1987.

Donald R. Prinz, Sacramento, Cal., for plaintiff-appellee.

Richard R. Terzian, Los Angeles, Cal., for defendant-appellant.

Before KOELSCH, SNEED and TANG, Circuit Judges.

TANG, Circuit Judge:

In this appeal we confront two issues. We decide first whether the involvement of California water law issues in an antitrust case warrants either dismissal for reasons of wise judicial administration or abstention. Because dismissal was not necessary for reasons of wise judicial administration and since federal resolution of the antitrust claims does not unduly intrude upon state interests, we affirm the district court's refusal to dismiss or abstain. We also decide whether a city enjoys immunity from the antitrust laws for refusing consent to a water district which wished to sell certain water it had acquired from the city. Because we hold that the refusal to consent was a logical and foreseeable result of the city's statutory authorization regarding water rights, we reverse the district court's determination that the city was not entitled to immunity, and remand with instructions to dismiss the action.

I

The facts are undisputed and appear in the district court opinion at 634 F.Supp.

656–57. The City of Bakersfield (City) is located near the Kern River in Kern County, California. In 1976, it acquired certain Kern River water rights and related facilities. The City financed the acquisition by issuing municipal bonds, representing that future revenues from water contracts with utilities would serve to service the debt. Such a contract was entered into with the Kern-Tulare Water District (District). The contract provided for annual payments by the District to the City in the amount of $400,000 in return for 20,000 acre-feet of water per year. The contract provided further that, subject to certain exceptions, the District was prohibited from transfer of water received by the city under the contract without consent of the City.

The District attempted to sell the bulk of its 1983 entitlement to other districts. The City refused consent. The subject water was never used, however; the water eventually ran into the state aqueduct, and out of the Kern County water basin. The District filed an amended complaint in the U.S. District Court for the Eastern District of California on September 20, 1984, which alleged that: (1) the City's refusal to consent to the transfer violated § 1 of the Sherman Act, 15 U.S.C. § 1; (2) the City was a monopolist in violation of § 2 of the Sherman Act, 15 U.S.C. § 2; (3) the City breached its contract; and (4) the City violated § 17200 of the California Business and Professions Code, which prohibits unfair competition. The District sought $340,000 in damages.

Pursuant to Fed.R.Civ.P. 56(d), the City moved on December 21, 1984, for a determination of a material issue relating to the retroactive application of the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34–36 (the LGAA). The City argued that the LGAA, which immunizes local governments from damages liability under the antitrust laws for acts undertaken in an official capacity, should be applied retroactively to it. The district court rejected this argument and denied the motion on March 26, 1985. Thereafter, the City moved for abstention or, in the alternative, summary judgment, and for reconsideration of the order denying retroactive application of the LGAA. The district court denied the motions in an opinion set forth at 634 F.Supp. 656 (E.D.Cal.1986). The district court certified its decision for interlocutory appeal under 28 U.S.C. § 1292(b).

## II

In denying the City's motion for abstention, the district court declined to abstain under the doctrine enunciated in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and declined to dismiss for reasons of "wise judicial administration" under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). We review its decision for an abuse of discretion. *See Turf Paradise v. Arizona Downs*, 670 F.2d 813, 819 (9th Cir.1982) (citing *Pue v. Sillas*, 632 F.2d 74, 78 (9th Cir.1980)), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982). We affirm the district court's refusal to abstain or dismiss.

### A

■ *Burford* abstention is appropriate where

... there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar. [citation].... In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial policy concern.

*Colorado River Water*, 424 U.S. at 814, 96 S.Ct. at 1244. *See Burford*, 319 U.S. 315, 63 S.Ct. 1098. The purpose of *Burford* abstention is the avoidance of federal intrusion into matters which are largely of local concern and which are within the special competence of local courts. *International Brotherhood of Electrical Workers*, 614 F.2d 206, 212 n. 1 (9th Cir.1980). In *Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S.

593, 594, 88 S.Ct. 1753, 1754, 20 L.Ed.2d 835 (1968), the Supreme Court held that whether a trespass relating to water rights could be a "public use" within the meaning of a state constitution constituted a "truly novel" issue of state law which warranted *Burford* abstention. The court noted that, "in the arid State of New Mexico," the question presented was a crucial one of state law which should await state court adjudication. *Id.*

In *Colorado River Water,* while stating that *Burford* abstention was unavailable, the Supreme Court nonetheless upheld the district court's dismissal of the case. It did so in the interest of "wise judicial administration" in light of several factors which counseled in favor of unified state proceedings. Among these factors were concurrent state jurisdiction over the claims, and the McCarran Amendment, 43 U.S.C. § 666, which evinced a strong federal policy against piecemeal adjudication of water rights in a river system. 424 U.S. at 819, 96 S.Ct. at 1247.

### B

In this case, the district court refused abstention on the grounds that: (1) a decision on the immunity question would have little or no impact upon implementation of state water policy; and (2) state water law was germane only as determinative of immunity, and thus the exercise of federal jurisdiction would not be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. The court found no "exceptional circumstances" presented by state water policy, "a subject which is unambiguous." 634 F.Supp. at 664–65. We agree substantially with the district court's analysis.

It is possible to characterize this case as one which presents this difficult question of state law: whether a restriction on transfer of surplus water violates the policy in favor of voluntary transfer and against waste. As the district court noted, however, resolution of this question is important only insofar as it determines the federal question of immunity, and not as it bears on policy problems so important that they transcend the result in this case. Every antitrust case which presents a question of *Parker* immunity necessarily involves construction or application of some state law. Although we choose not to characterize California water law as "unambiguous," we do not confront an unsettled question of state law such as in *Louisiana Power & Light v. Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), or *Kaiser Steel. Kaiser Steel* concerned a question of state law which was "truly novel": whether a certain statute authorized condemnation of land to secure water for a private business in contravention of a state constitutional provision relating to taking. No such novel question appears here, although we nevertheless confront the "vital concern" of water rights in an "arid State." The question, as always in *Parker* immunity cases, is whether state law authorizes the challenged action. As in *Turf Paradise,* we are called upon to adjudicate federal antitrust claims and, in so doing, must refer to state law in order to resolve an immunity question.

Nor is federal determination of the immunity question disruptive of state efforts to establish coherent policy with respect to municipal control over water and water rights. No special considerations of federal-state relations exist here which would make the state law issue appropriate for deferral to the California courts. Concededly, we confront an area of comprehensive and complex regulation under state law. But the mere involvement of an area of state law which is the subject of detailed regulation does not make abstention appropriate. *See* 670 F.2d at 817. Our adjudication might possibly create conflict with state law; but the mere potential for conflict, without more, does not warrant abstention either. *See Colorado River Water,* 424 U.S. at 815–16, 96 S.Ct. at 1245; *Turf Paradise,* 670 F.2d at 820. The question instead is whether such potential conflict would impermissibly impair California's efforts to establish policy regarding the regulation of water and water rights. We answer in the negative. We are called upon to adjudicate the District's federal

antitrust claims. The only potential impact on the state arising from federal adjudication of those claims is the limitation of the District to the state courts if it wishes to pursue those claims which are not precluded by state action immunity. That result does not affect in the slightest California's ability to take acts necessary to regulate water and water rights, including measures aimed at precluding waste and unreasonable use. The district court thus correctly concluded that *Burford* abstention was inappropriate.

The District's reliance upon *Colorado River Water*, which permits abstention on the grounds of "wise judicial administration," is similarly misplaced. *Colorado River Water* involved claims over which there existed concurrent state and federal jurisdiction. But here, as in *Turf Paradise*, the federal courts have exclusive jurisdiction over federal antitrust claims. *See* 670 F.2d at 821. Thus, the exercise of federal jurisdiction does not result in any waste of judicial resources. "Wise judicial administration" does not call for abstention in such circumstances. *See id. Colorado River Water* is further inapposite given the reliance upon the McCarran Amendment in that case and the absence of any similar federal legislation counseling in favor of unified state proceedings in this case.

Abstention is an extraordinary and narrow exception which is appropriate only where the consequences of exercising federal jurisdiction outweigh our obligation to adjudicate suits over which we have jurisdiction. *See Turf Paradise*, 670 F.2d at 819 (citing *Colorado River Water*, 424 U.S. at 813, 96 S.Ct. at 1244). The federal courts are obliged to exercise their jurisdiction in all but the most exceptional cases. This is not such an exceptional case. There was no abuse of discretion.

### III

In denying the City's motion for summary judgment, the district court held that the City was not entitled to state action immunity from the antitrust laws under the doctrine enunciated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

We review this decision de novo. *See State of Idaho v. Hodel*, 814 F.2d 1288, 1292 (9th Cir.1987) (citing *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986)). We reverse the district court's denial of summary judgment.

### A

In *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that no federal antitrust liability arises for an anti-competitive act by a state acting "as sovereign." Cities are not themselves sovereign. *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). Nevertheless, the state "as sovereign" may sanction anticompetitive municipal activities and thus shield its cities with *Parker* immunity for such activities. *Id.* at 413, 98 S.Ct. at 1137. Where a city claims *Parker* immunity, however, the court will require that the state policy authorizing the challenged restraint be clearly articulated and affirmatively expressed. *See id.* at 410, 98 S.Ct. at 1135. *See also California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *New Motor Vehicle Board of California v. Orrin W. Fox Co.*, 439 U.S. 96, 109, 99 S.Ct. 403, 411, 58 L.Ed.2d 361 (1978). A city need not point to a specific, detailed legislative authorization before it may properly assert a *Parker* defense to an antitrust suit. *See Springs Ambulance Service v. City of Rancho Mirage*, 745 F.2d 1270, 1273 (9th Cir.1984) (citing *Lafayette*, 435 U.S. at 415, 98 S.Ct. at 1138) (statute authorizing city to contract for ambulance services contemplated municipal provision of exclusive, free ambulance service). That is, not every anticompetitive effect of a statute need be articulated in order to satisfy the "clear articulation" requirement. *See Preferred Communications, Inc. v. City of Los Angeles*, 754 F.2d 1396, 1413–14 (9th Cir.1985). "No legislature can be expected to catalog all of the anticipated effects of a statute ..." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43, 105 S.Ct. 1713, 1719, 85 L.Ed.2d 24 (1985). So

long as the restraint is a "foreseeable result" which results logically from a broad grant of regulatory authority to a city, the "clear articulation" requirement is satisfied. *Id.* at 42, 105 S.Ct. at 1718. We have upheld *Parker* immunity in various contexts. *See Mercy-Peninsula Ambulance, Inc. v. County of San Mateo,* 791 F.2d 755, 757–58 (9th Cir.1986); *Grason Electric Co. v. Sacramento Municipal Utility District,* 770 F.2d 833, 837–38 (9th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 886, 88 L.Ed.2d 921 (1986); *Golden State Transit Corp. v. City of Los Angeles,* 726 F.2d 1430, 1433–34 (9th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). *Compare Parks v. Watson,* 716 F.2d 646, 663–64 (9th Cir.1983).

### B

■ In denying the City's motion for summary judgment, the district court held that the City was not immune because its action resulted in the loss of the water to the Kern County water basin, thus contravening the state policy favoring efficient use and free transfer of water. 634 F.Supp. at 662–63. In evaluating the district court's reasoning, a brief synopsis of the applicable California constitutional and statutory provisions is necessary.

We begin with the state constitution, which provides that water resources are to be put to beneficial use to the fullest extent of which they are capable, and that waste and unreasonable use are to be prevented. Cal. Const., Art. 10, § 2. *See also* Cal. Water Code § 100 (West 1971). The right to water and it use is limited to that which is reasonably required, and does not extend to waste or unreasonable use. Cal. Const., Art. 10, § 2. The use of all water is subject to the regulation and control of the state, in a manner to be prescribed by law. Cal. Const. Art. 10, § 5. The constitution declares further that municipal corporations may establish, purchase and operate public works to furnish their inhabitants with water. Cal. Const. Art. 11, § 9(a).

We read these constitutional provisions to embody the principle that, within constraints imposed by law, municipalities are empowered to furnish themselves and their inhabitants with water, consistent with beneficial and reasonable use and the prohibition against waste. We evaluate the relevant statutory provisions in light of this principle.

It is the "established policy" of California that a city's right to hold or use water "to the fullest extent necessary for existing and future uses" should be protected to the fullest extent necessary for existing and future uses, subject to reasonable use and the prohibition against waste. Cal. Water Code § 106.5 (West 1971). Cities enjoy the power to contract for supplying themselves with water for municipal purposes. Cal. Government Code § 38742 (West 1968). Cities are empowered to acquire water, water rights, and related facilities by purchase or by condemnation, in order to supply water for their use and the use of their inhabitants. Cal. Government Code § 38730 (West 1968). Section 382 provides that cities may sell, lease, exchange or transfer surplus water. It is also state policy to facilitate voluntary transfer of water and water rights where consistent with the public welfare of the place of export and the place of import, Cal. Water Code § 109 (West Supp.1987); the legislature has found that voluntary water transfers between users can result in more efficient use of water. Cal. Water Code § 475 (West Supp.1987). Cities are subject to the power of the Water Resources Control Board to take action necessary to prevent such unreasonable use or waste. Cal. Water Code § 275 (West Supp. 1987).

This constitutional and statutory framework evinces a clearly articulated and affirmatively expressed state policy to displace competition with regulation in the area of municipal control over water and water rights, so long as the municipality does not engage in waste or unreasonable use. Viewed in light of that policy, we hold that actions such as the City's refusal to consent to the District's attempted transfer were contemplated by the legislature. The restriction of transfer is foreseeable within the authority of the city to contract for, acquire and hold water rights, to furnish itself and its inhabitants with water, and to sell, lease, exchange, or transfer surplus

water. *See Town of Hallie,* 471 U.S. at 42–43, 105 S.Ct. at 1718–19; *Mercy-Peninsula Ambulance,* 791 F.2d at 758; *Grason Electric Co.,* 770 F.2d at 838. The statutes summarized *supra* are at least as general as those held to contemplate similar anticompetitive conduct in *Town of Hallie,* 471 U.S. at 41, 105 S.Ct. at 1718, *Mercy-Peninsula Ambulance,* 791 F.2d at 757–58, *Grason Electric,* 770 F.2d at 837, and *Springs Ambulance Service,* 745 F.2d at 1273. Sufficiently clear articulation exists where the statutes clearly contemplate that a city *may* engage in anticompetitive conduct. *Grason Electric Co.,* 770 F.2d at 836 (quoting *Town of Hallie,* 471 U.S. at 43–44, 105 S.Ct. at 1719) (emphasis in original). Certainly, in empowering municipal corporations to: (1) contract for water for municipal purposes, Cal. Government Code § 38742(a); (2) purchase and operate public works in order to supply water to the cities and their inhabitants, Cal. Const. Art. 11, § 9(a), Cal. Government Code § 38730, and (3) sell, lease, exchange or otherwise transfer surplus water, Cal. Water Code § 382, the legislature contemplated that, in the exercise of those powers, cities might act by contract to preserve access to water for existing and future uses. *See Mercy-Peninsula Ambulance,* 791 F.2d 757–58 (statutory authorization for counties to contract for and regulate paramedic services had foreseeable anticompetitive effect); *Grason Electric Co.,* 770 F.2d at 837–38 (statutory authorization for utility to price below cost and "do all things necessary" to exercise its powers contemplated anticompetitive conduct), *cert. denied,* 474 U.S. 1103,

106 S.Ct. 886, 88 L.Ed.2d 921 (1986); *Springs Ambulance Service,* 745 F.2d at 1273 (relying on Cal. Government Code § 38794 permitting city to "contract for ambulance service" in upholding immunity for provision of free, exclusive ambulance service); *Golden State Transit Corp.,* 726 F.2d at 1433–34 (city's refusal to renew taxicab franchise consistent with state policy to displace competition with regulation in taxicab industry), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). Indeed, a city's ability to do so is explicitly protected "to the fullest extent necessary" so long as the city does not engage in waste or unreasonable use. Cal. Water Code § 106.5. It so occurred here. The City, anticipating future use for the water it sold to the District, acted to protect its right as guaranteed not only by its contract but as embodied in the policy stated in § 106.5. So long as it did not waste or unreasonably use that water, it acted consistent with the affirmatively expressed and clearly articulated state policy in favor of local control of water and water rights.

We reject the district court's reasoning that the City's refusal to consent resulted in waste or unreasonable use in contravention of state law.[1] *See* 634 F.Supp. at 662. The Supreme Court of California rejected a nearly identical argument in *City of Pasadena v. City of Alhambra,* 33 Cal.2d 908, 207 P.2d 17 (1949). In that case, the court examined the failure of a city to capture and return to an underground basin storm waters and street flush water. In rejecting the argument that such failure constituted waste, the court reasoned that simply be-

---

1. The district court emphasized its reliance upon sections 106.5 and 109, which it construed to prohibit the city's transfer restriction. Section 106.5 provides:

It is hereby declared to be the established policy of this State that the right of a municipality to acquire and hold rights to the use of water should be protected to the fullest extent necessary for existing and future uses, but that no municipality shall acquire or hold any right to waste water, or to use water for other than municipal purposes, or to prevent the appropriation and application of water in excess of its reasonable and existing needs to useful purposes by others subject to the rights of the municipality to apply such water to municipal uses as and when necessity therefor exists.

Section 109 provides:

(a) The Legislature hereby finds and declares that the growing water needs of the state require the use of water in * * * an efficient manner and that the efficient use of water requires * * * certainty in the definition of property rights to the use of water and * * * transferability of such rights. It is hereby declared to be the established policy of this state to * * * facilitate the voluntary transfer of water and water rights where consistent with the public welfare of the place of export and the place of import.

(b) The Legislature hereby directs the Department of Water Resources, the State Water Resources Control Board, and all other appropriate state agencies to encourage voluntary transfers of water and water rights ...

cause the subject water ran into storm drains and eventually out of the area did not mean that waste had occurred. *Id.* We confront highly similar facts here. 1983 was a "wet" year, and the water ran into the state aqueduct. Indeed, where the water is not used by the city but pumped into the aqueduct for use elsewhere, the city has *avoided* waste, consistent with § 106.5's prohibition of appropriation and application of water in excess of its reasonable and existing needs. *Compare Erickson v. Queen Valley Ranch Co.*, 22 Cal. App.3d 578, 99 Cal.Rptr. 446 (1971) (diversion from creek by 2½ mile ditch over arid land, causing loss of ⅝ of flow en route, held unreasonable use); *Joslin v. Marin Municipal Water District*, 67 Cal.2d 132, 60 Cal.Rptr. 377, 429 P.2d 889 (1967) (en banc) (use of water as agent to expose, carry and deposit sand, gravel and rock held unreasonable); *Tulare Irrigation District v. Lindsay-Strathmore Irrigation District*, 3 Cal.2d 489, 567, 45 P.2d 972 (1935) (flooding for sole purpose of exterminating gophers and squirrels in area with great need of water held waste). We note further that California has empowered its Water Resources Control Board and other agencies to take various measures to guard against waste and unreasonable use. *See* Cal. Water Code §§ 275, 2525 *et seq; Elmore v. Imperial Irrigation District*, 159 Cal.App.3d 185, 205 Cal.Rptr. 433 (1984); *Environmental Defense Fund, Inc. v. East Bay Municipal Utility District*, 26 Cal.3d 183, 161 Cal.Rptr. 466, 605 P.2d 1 (1980). Such administrative machinery resembles the "customary and reasonable procedural safeguards" noted in *New Motor Vehicle Board v. Orrin W. Fox Co.*, 439 U.S. 96, 109, 99 S.Ct. 403, 411, 58 L.Ed.2d 361 (1978). Those safeguards protect against the likelihood that a city will be able to waste or unreasonably use water before another potential user can avail itself of recourse.

Otherwise, we do not discern the "numerous and explicit statutes" relied upon by the district court, 634 F.Supp. at 662, which derogate from a municipality's right to preserve water for present and future uses so long as it does not engage in waste or unreasonable use. As to the district court's reliance upon § 109, that section states a policy of facilitation of voluntary transfer *where consistent* with the public welfare. The record is bare of any indication that the attempted transfer was consistent with the public welfare of either the place of attempted import or that of export—the City of Bakersfield.

Nor are we persuaded by the District's forceful reliance upon *Parks v. Watson*, 716 F.2d 646, 663–64 (9th Cir.1983), in support of the argument that the City exceeded its statutory authorization in refusing consent to the attempted transfer. *Parks* involved a city's refusal to vacate certain property which contained geothermal wells. The city conditioned vacating of its property on plaintiff's dedication to it of those portions of the land which contained the wells. Plaintiff, who planned construction of apartments which would be heated by the wells, alleged that the city combined to restrain trade in, and intended monopolization of, the city's geothermal heating market. The city argued that Or.Rev.Stat. §§ 523.010–.710 (1981), which authorized public ownership of geothermal resources, reflected legislative authorization for a "little monopoly" in each geothermal heating district. 716 F.2d at 663, 664. We questioned this contention, given the absence in the statute of an indication that the legislature intended such monopolistic control of the geothermal heating market by cities. *Id.* In rejecting immunity, however, we relied upon the city's contravention of the statute's requirement that a geothermal heating district not be formed by the city until its charter authorized it to do so. *Id.* at 664. The challenged conduct thus lacked the benefit of a clearly articulated and affirmatively expressed state policy to exclude competition in the geothermal heating market prior to the formation of geothermal heating districts. *Id.* Here we confront entirely distinct statutory frameworks and facts. In this case the City has specifically implemented its delegated authority by adopting ordinances as part of its Municipal Code, creating a Water Board, and giving the Board certain powers and duties. Thus no contravention of explicit state law by way of proceeding even without municipal authority, such as oc-

curred in *Parks*, confronts us here. Moreover, the Water and Government Code provisions discussed *supra* provide a clear indication that the legislature intended that municipal corporations exercise the power to contract for, acquire, own, and transfer water and water rights for the purpose of furnishing water to themselves and their inhabitants for both present and future uses. No similar indication existed in *Parks* that the legislature contemplated municipal monopolization of the geothermal heating market in enacting §§ 523.-010-.710. *Id.* at 663. No analogue exists, for example, to Cal. Water Code § 106.5, which protects "to the fullest extent necessary for existing and future uses" the right of a municipality to acquire and hold water rights.

Finally, even assuming the city may have contravened § 109's declaration of policy in favor of voluntary transfer, such contravention does not dispose of the immunity question. " 'Ordinary errors or abuses in the administration of powers conferred by the state should be left for state tribunals to control.' " P. Areeda & H. Hovenkamp, Antitrust Law ¶ 212.3b at 106 (Little, Brown & Co. Supp.1986). *See Llewellyn v. Crothers,* 765 F.2d 769, 774 (9th Cir.1985) (citing Areeda & Hovenkamp). Even though errors of fact, law or judgment by a public agency are not "authorized" within the meaning of *Parker*, the absence of immunity does not necessarily follow. Although the record sheds little light on this issue, it may be that the City erred by overestimating its water needs, and on that basis refused consent to the District's attempted transfer. If such an error occurred, it became manifest when the water was pumped into the state aqueduct. But such an error does not necessarily strip the City of its immunity. State action immunity stems from the federalist notion of respect for the state's actions as sovereign. Where ordinary errors or abuses in exercise of state law, such as the California Water and Government Codes, serves to strip the city of state authorization, aggrieved parties should not forego customary state corrective processes, *see, e.g., Environmental Defense Fund,* 26 Cal.3d 183, 161 Cal.Rptr. 466, 605 P.2d 1, in favor of

federal antitrust remedies. *See Llewellyn, supra;* Areeda & Hovenkamp, *supra* at 104-05.

IV

Reversal of the district court's denial of summary judgment on the basis of state action immunity makes unnecessary consideration of the issue of whether the LGAA should have been applied retroactively. We note, however, that the district court likely erred in refusing retroactive application of the LGAA given: (1) the inapplicability of the governmental/proprietary distinction, *see* Areeda & Hovenkamp at 94 n. 32; (2) its reliance on the erroneous factual premise that the Corporation and not the City would suffer liability; (3) the early stage of the litigation, *see Woolen v. Surtran Taxicabs, Inc.,* 615 F.Supp. 344, 351-52 (N.D.Tex.1985), *aff'd,* 801 F.2d 159 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1567, 94 L.Ed.2d 759 (1987).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED with instructions to dismiss the action on the basis of state action immunity.