**MERCY–PENINSULA AMBULANCE, INC., Plaintiff-Appellant,**

**v.**

**COUNTY OF SAN MATEO, et al., Defendants-Appellees.**

**No. 85–1548.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1985.

Decided June 10, 1986.

Roderick G. Dorman, Dorman & Wheeler, Los Angeles, Cal., for plaintiff-appellant.

Michael Bradley, Murphy, Pearson, Bradley & Beattie, San Francisco, Cal., Thomas Fellows, San Jose, Cal., William J. Meeske, Michael J. Shockro, Lathan & Watkins, Los Angeles, Cal., Rochelle D. Alpert, Michael F. Ram, Morrison & Foerster, San Francisco, Cal., James C. Martin, Crosby, Heafey, Roach & May, Oakland, Cal., for defendants-appellees.

Before CHOY, SKOPIL and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

Appellant Mercy-Peninsula Ambulance brought this antitrust action against San Mateo County and various medical care providers. The appellant, Mercy, operates ambulances in the county and wishes to deliver paramedic services. It challenges the county's granting of exclusive contracts to others for such services. The principal issue that we must decide is whether the challenged conduct enjoys state action immunity under the antitrust laws. The district court dismissed the action, 592 F.Supp. 956, and we affirm.

San Mateo County contracts with various emergency medical services providers to provide services pursuant to the California Emergency Medical Services Act System and the Prehospital Emergency Medical Care Personnel Act, Cal. Health and Safety Code §§ 1797–1799.110 (West Supp.1986) ("EMS Act"). Since 1976, Mercy has contracted with the county to provide emergency ambulance services as a backup to the primary ambulance provider, Medevac. All of the relevant contracts for medical services were based upon competitive bidding and have become part of the county's implementation of the EMS Act. The Act is intended to improve the quality of emergency medical service programs through county regulation. Cal.Health and Safety Code §§ 1797.5, 1797.200. Under the Act, passed in 1980, only qualified medical technicians certified by the county as paramedics can perform certain pre-hospital procedures, referred to in the statute as "advanced life support." §§ 1797.84, 1797.172. Persons delivering such paramedic services must be an authorized part of the county's emergency medical services system. § 1797.178. Since 1980, Mercy has sought to provide backup paramedic services in San Mateo County, but the county has refused to authorize its participation in the system as a paramedic provider.

Mercy filed this action against the county, two other ambulance services, including Medevac, and four hospitals, claiming that all of the defendants conspired to prevent Mercy's employees from providing paramedic services. Mercy does not contend that the county is required to permit all technicians who are able to pass a qualifying test to provide paramedic services. It cannot sustain such a position, for the state statute expressly contemplates counties limiting paramedic services by contracts and other means. See Cal.Health and Safety Code §§ 1797.204; 1798.200(j). Mercy does contend that the county has been too selective. It argues that California law requires the county to authorize an otherwise-qualified entity to provide paramedic care if the entity comes within the county's system for provision of emergency medical services in any capacity. Mercy contends that the county should authorize it to provide paramedic care, and that the county's refusal is a violation both of the state EMS Act and of the federal antitrust laws.

Mercy thus challenges a selective certification and authorization system, based upon competitive bidding, which has the effect of excluding some providers. We affirm the district court's dismissal, because such exclusion is the foreseeable consequence of state policy as adopted in the EMS Act. It is therefore not subject to attack under the antitrust laws; it enjoys state action immunity under the doctrine as developed and applied in *Parker v. Brown,*

317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and subsequent decisions of the Supreme Court and this court.

In *Parker v. Brown*, the Supreme Court relied on principles of federalism and state sovereignty when it held that the Sherman Act was not intended to restrain "state action or official action directed by a state." *Parker*, 317 U.S. at 351, 63 S.Ct. at 313. This immunity extends to local subdivisions such as counties or municipalities when the alleged anticompetitive conduct is "pursuant to state policy to displace competition with regulation or monopoly public service." *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 413, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). More recently, the Supreme Court has stated that the test of exemption from antitrust liability with respect to governmental subdivisions is whether the anti-competitive conduct was a foreseeable result of the authority granted by the state legislature to the locality to provide and regulate a service. *Town of Hallie v. City of Eau Claire*, — U.S. —, 105 S.Ct. 1713, 1718, 85 L.Ed.2d 24 (1985).

*Hallie* involved a challenge to a city's monopolization of sewage treatment services under state statutes regulating sewage service. The Court stated:

[i]t is not necessary ... for the state legislature to have stated explicitly that it expected the City to engage in conduct that would have anticompetitive effects.... [I]t is sufficient that the statutes authorized the City to provide sewage services and also to determine the areas to be served. We think it is clear that anticompetitive effects logically would result from this broad authority to regulate.

*Id.* 105 S.Ct. at 1718.

This court has had occasion to consider whether anti-competitive conduct on the part of local governments was subject to exemption from the antitrust laws, and in several recent cases has reaffirmed the principle that state statutes need not require anti-competitive conduct for the exemption to apply when it is apparent that anti-competitive effects would result from a broad authority to regulate. *Springs Ambulance Service v. City of Rancho Mirage*, 745 F.2d 1270, 1273 (9th Cir.1984) (statute providing that "city may contract for ambulance service to serve the residents of the city as convenience requires" held to demonstrate a sufficiently clear articulation of state policy to displace competition); *Golden State Transit v. City of Los Angeles*, 726 F.2d 1430, 1434 (9th Cir. 1984), *cert. denied*, — U.S. —, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985) (statute providing for state regulation of taxicabs if cities did not regulate held to provide basis for municipality's immunity).

The statute in this case directs the counties to establish a plan for the provision and regulation of emergency medical services, including ambulance and paramedic services. Cal.Health and Safety Code § 1797.204. It requires the counties to license and certify qualified paramedic personnel, §§ 1797.210, 1797.214, and it specifically authorizes the counties to restrict and limit provision of paramedic services to persons or organizations who are "an authorized part of the emergency medical services system of the local EMS agency...." § 1797.178; *see also* § 1798.200(j). The Act requires the local emergency medical services system plan to be "based on public and private agreements...." § 1797.204, and the State Emergency Medical Services Authority must review and approve the local plans. § 1797.105. With respect to paramedic services, the most recent amendments to the EMS Act's provisions permit the local agency to "restrict operations to one or more ... providers of ... advanced life support." §§ 1797.85, 1797.224.[1] These provisions indicate that not every organization desiring to provide emergency medical services will be permitted to provide such services in San Mateo County

1. In 1984, the California Legislature amended the EMS Act to include § 1797.85 and § 1797.-224. These provisions became effective on January 1, 1985, after the institution of this suit on March 13, 1984.

and expressly authorize a monopoly for paramedic services.

There can thus be no question that the statute's authorization for the counties to contract for paramedic services, and to regulate those who can provide them, has a foreseeably anti-competitive effect which excludes some potential service providers. Mercy itself concedes that the foreseeable and logical result of the EMS Act's authorization to counties to develop local emergency services systems is to exclude some providers from the system. We have held as much. *See, e.g., Springs Ambulance Service, Inc.*, 745 F.2d at 1273 (foreseeable result of authorizing city to contract for ambulance services is exclusion of ambulance providers not awarded the contract). Furthermore, the California Legislature has realized that the EMS Act reduces competition among providers of emergency medical services and might generate antitrust litigation.[2] Section 1797.6(b) of the EMS Act now expressly states the legislature's intent to exercise a sufficient degree of state direction to provide "state action immunity under federal antitrust laws" to local agencies in carrying out the functions authorized by the Act. Mercy does not attempt to argue that substantial anti-competitive effects were beyond the contemplation of the legislature when it passed this statute.

Mercy's argument is more focused. It argues that its own exclusion from providing paramedic care is beyond contemplation of the legislature once the county authorized Mercy to provide backup ambulance services. Under Mercy's interpretation of the statute, the county first must offer certification as paramedics to the personnel of all entities it authorizes to play any role in the EMS system, and then must permit those entities to provide paramedic services.

The threshold difficulty with Mercy's argument from the standpoint of federal antitrust law is that the statute on its face is a broad, discretionary grant of authority to the counties to regulate and contract for services. Virtually any anti-competitive effect, including exclusive contracts with primary providers and elimination of backup ambulance services altogether, would appear to be well within the statute's contemplation. Conduct that excludes Mercy and other ambulance companies from competing with designated primary providers is an anti-competitive effect which " 'logically would result from this broad authority to regulate.' " *Grason Electric Co. v. Sacramento Municipal Utility District*, 770 F.2d 833, 838 (9th Cir.1985) (quoting *Town of Hallie*, 105 S.Ct. at 1718), cert. denied, 106 S.Ct. 886 (1986). State action immunity should apply to the county under such circumstances.

■ Nor do we agree with Mercy that the county has violated the EMS Act by excluding organizations that are part of the system from providing paramedic care. Even assuming that such a violation of the state statute could open the door to antitrust liability, there has been no violation.

Mercy relies on § 1797.210 and § 1797.178. Section 1797.210 provides that the medical director of the local EMS agency "shall issue" a certificate to all qualified paramedics. It does not, however, require the county to allow all certified paramedics to provide care under the EMS system. This is made clear in § 1797.178, which provides that no person or organization may provide advanced life support unless it

---

**2.** After the institution of this suit in March 1984, the California Legislature amended the EMS Act to include § 1797.6, which became effective on January 1, 1985. Subsection (b) of that section now provides:

(b) It is the intent of the Legislature in enacting this section and Sections 1797.85 and 1797.224 to prescribe and exercise the degree of state direction and supervision over emergency medical services as will provide for state action immunity under federal antitrust laws for activities undertaken by local governmental entities in carrying out their prescribed functions under this division.

Cal.Health and Safety Code § 1797.6(b) (West Supp.1986).

is an authorized part of the EMS system. That section limits those who can provide advanced life support to those who are part of the system. It does not, however, require the county to authorize all participants in the system to provide paramedic care.

The district court therefore correctly held that the county's anti-competitive conduct is protected in this case by state action immunity to federal antitrust laws. Mercy concedes that if the county is immune from antitrust liability, it has no claim against the private defendants. Therefore, the defendants' allegedly anti-competitive conduct since passage of the EMS Act is exempt from the antitrust laws.

We turn finally to Mercy's claim that the county violated section 2 of the Sherman Act during the brief period between March and September of 1980, which is within the statute of limitations but prior to the enactment of the EMS Act. Section 2 of the Sherman Act provides that:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor.

The gravamen of a section 2 claim is the deliberate use of market power by a competitor to control price or exclude competition. *See, e.g., United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966); *United States v. E.I. DuPont De Nemours & Co.*, 351 U.S. 377, 380, 76 S.Ct. 994, 998, 100 L.Ed. 1264 (1956); L. Sullivan, *Handbook of the Law of Antitrust* § 7, at 29. The county performs no health care services. The district court therefore correctly concluded that the county is not a competitor in the health care provision market and cannot be charged with having used market position to exclude competition.

Affirmed.