86 F.3d 1162
 1996-1 Trade Cases P 71,436
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
METRO TOWING, INC., Plaintiff-Appellant,
v.
CITY OF LOS ANGELES; Archer'A Vineland Service, Inc.,; Jim
Milhoan; ATS-Northeast Tow; Arthur Mercer; Ross Baker;
Black & White Garage, Inc.; Tony Torres; Bruffy's, Inc.;
Bob Brough; Continental Trucking/Towing, Inc.; Will
Freeman; Hanks's Wilshire Tow Service, Inc.; Les Temaner;
Hollenbeck Automotive, Corp.; Alan Shepard; Hollywood Tow
Service, Inc.; Saul Minzer; Kelmark Tow; Paul Nissley;
Keyser Automotive, Inc.; Thomas Keyser; Rheuban Motors,
Inc.; Rosedith Rheuban; Seventh Street Garage, Inc.; Dave
Bearden; Howard Sommers Towing Inc.; Howard Sommers;
Swanney & McDonald, Inc.; Edward Swanney; Viertel's
Automotive Service, Inc.; Rich Viertel, Defendants-Appellees.
 No. 94-56677.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided May 31, 1996.
 
 Before: REINHARDT, KOZINSKI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff-Appellant Metro Towing, Inc. brought suit in the Central District of California against the City of Los Angeles and sixteen private towing companies with whom the City chooses to do business. Metro alleged that the operation of Los Angeles' Official Police Garage ("OPG") program, which designates private towing and automobile storage companies to help the City retrieve and store impounded vehicles, restrained trade in violation of the Sherman Act and deprived Metro of a constitutionally-protected property interest in an OPG designation in violation of 42 U.S.C. § 1983. The district court dismissed all claims for failure to state a claim upon which relief could be granted. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 The district court held that Metro's suit against the City of Los Angeles was barred by the state-action immunity doctrine. Parker v. Brown, 317 U.S. 341 (1943) (establishing state-action immunity doctrine). We have adopted a two-part test to determine whether a "clearly articulated" state policy has authorized a municipality's conduct and thus triggered state-action immunity. See Traweek v. City & County of San Francisco, 920 F.2d 589, 591 (9th Cir.1990). First, this court must determine whether the legislature authorized the challenged actions of the City. Second, the court must determine whether the legislature intended to displace competition with regulation. Id. at 591-92.
 
 
 4
 The California Legislature's delegation of vehicle removal and storage authority is clear and specific enough to satisfy the "authorization" prong of the two-part state-action immunity test. The Legislature explicitly authorized cities to remove vehicles from the streets and to designate garages for the storage of impounded vehicles. Cal.Veh.Code § 22651 (removal of vehicles); Cal.Veh.Code § 22850 (designation of garages). This authorization is clearer and more specific than is generally required for state-action immunity. See, e.g., Town of Hallie v. City of Eau Claire, 471 U.S. 34, 39 (1985); Lancaster Community Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 400 (9th Cir.1991), cert. denied, 502 U.S. 1094 (1992); Kern-Tulare Water Dist. v. City of Bakersfield, 828 F.2d 514, 518 (9th Cir.1987), cert. denied, 486 U.S. 1015 (1988).[1]
 
 
 5
 The statutory regime for vehicle removal and towing found in the California Vehicle Code also satisfies the "anticompetitive intent" part of the state-action immunity test. Allowing a city to either perform all towing and storage services independently or to designate some towing and storage services as OPGs clearly contemplates that some, if not all, privately owned and operated towing and storage companies will not service localities. We have repeatedly held that the exclusion of some service providers is a foreseeable anticompetitive result of statutory schemes similar to the one found in the California Vehicle Code. See, e.g., Mercy-Pennsylvania Ambulance, Inc. v. County of San Mateo, 791 F.2d 755, 758 (9th Cir.1986); Springs Ambulance Serv., Inc. v. City of Rancho Mirage, 745 F.2d 1270, 1273 (9th Cir.1984).
 
 
 6
 Appellant's complaint also purports to state a § 1 Sherman Act claim against the private towing and storage companies named in the complaint. Appellant fails, however, to allege that the private defendants engaged in any conduct actionable under the Sherman Act. Accordingly, the district court's decision to dismiss the antitrust claims against private defendants is affirmed.
 
 
 7
 Finally, Metro alleges that the City's failure to grant it an OPG designation is actionable under 42 U.S.C. § 1983. Metro bases its claim on procedural and substantive due process. Appellant, however, does not cite any independent authority that creates an entitlement to an OPG designation. See Russell v. Landrieu, 621 F.2d 1037, 1040 (9th Cir.1980) (noting that in order to establish a constitutionally-protected property interest, appellant must have "a legitimate claim of entitlement created and defined by an independent source, such as state or federal law" (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). Accordingly, we affirm the dismissal of appellant's § 1983 claim.
 
 
 8
 Metro may have a claim under state law arising out of allegations that the City of Los Angeles failed to abide by the terms of its charter. Metro does not, however, have a Sherman Act or due process claim.
 
 
 9
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellant principally argues that because the City exercised the power delegated to it by the state in a way that violated the City's charter, the City exceeded the scope of the state's vehicle removal and storage authorization. Appellant's focus on the City's charter is misguided. While Metro's allegation that the City violated its own charter must be accepted as true, it is well-settled that the mere fact that conduct violates state law does not strip a municipality of state action immunity. See, e.g., City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 371-72 (1991); Lancaster, 940 F.2d at 402 & n. 10; Traweek, 920 F.2d at 593; Boone v. Redevelopment Agency of San Jose, 841 F.2d 886, 892 (9th Cir.), cert. denied, 488 U.S. 965 (1988); cf. Tri-State Rubbish, Inc. v. Waste Management, Inc., 998 F.2d 1073, 1077 (1st Cir.1993)
 Of course, appellant may attack the City's violation of its charter other than through the Sherman Act. We have emphasized that principles of federalism and state sovereignty require that state law and not federal antitrust law remain the remedy for claims that state or city officials exceeded their authority under state law. See, e.g., Boone, 841 F.2d at 891-92.