**REDWOOD EMPIRE LIFE SUPPORT, a corporation; Stanley P. Cantor, Plaintiffs–Appellees,**

v.

**THE COUNTY OF SONOMA; The Sonoma County Emergency Medical Services Agency; Mark A. Kostielney; 911 Emergency Services, Inc., dba Sonoma Life Support, Defendants–Appellants.**

Nos. 98–15170, 98–15637.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 18, 1999

Filed Sept. 10, 1999

Vernon I. Zvoleff, Preuss, Walker & Shanagher, LLP, San Francisco, California, for the defendants-appellants.

Richard P. Hill, Moody & Hill, San Francisco, California, for the plaintiffs-appellees.

Before: MARY M. SCHROEDER, BETTY B. FLETCHER, and CYNTHIA HOLCOMB HALL, Circuit Judges.

SCHROEDER, Circuit Judge:

This case requires us again to consider the scope of state action immunity from the federal antitrust laws conferred by California's Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act ("EMS Act"). Cal. Health & Safety Code §§ 1797–1799.200. *See A–1 Ambulance Serv., Inc. v. County of Monterey*, 90 F.3d 333 (9th Cir. 1996); *Mercy–Peninsula Ambulance, Inc. v. County of San Mateo*, 791 F.2d 755 (9th Cir.1986). Appellee Redwood Empire Life Support ("Redwood") brought this antitrust action against Sonoma County and 911 Emergency Services, Inc., d/b/a Sonoma Life Support. Redwood challenged the County's exclusive contract with Sonoma

Life Support to provide ambulance services, including non-emergency transports, in central Sonoma County.

The district court issued a permanent injunction against Sonoma County because it concluded that the EMS Act did not contemplate exclusive contracts for non-emergency ambulance services at a basic life support ("BLS") level of service. With the guidance of an intervening decision of the California courts interpreting the statute, *Schaefer's Ambulance Service v. County of San Bernardino,* 68 Cal.App.4th 581, 80 Cal.Rptr.2d 385 (Ct.App.1998), *review denied,* March 31, 1999, we now reverse and hold that the statute authorizes exclusive franchises covering all levels of service provided by ambulances.

## FACTS

### A. Background

Counties in California are authorized to develop emergency medical services programs within the auspices of the EMS Act. *See* Cal. Health & Safety Code §§ 1797–1799.200. Counties implementing a program under the EMS Act must designate a local EMS agency that will be responsible for the administration of the county's program, including ambulance and paramedic services. The EMS Act permits a local EMS agency to create one or more exclusive operating areas for "emergency ambulance services or providers of limited advanced life support or advanced life support." Cal. Health & Safety Code §§ 1797.85, 1797.224 (West 1990).[1]

Section 1797.6(b) of the EMS Act explains that the California Legislature, by enacting sections 1797.85 and 1797.224, intended to confer state action immunity from federal antitrust laws for actions taken by local governmental entities under the EMS Act. Therefore, so long as a local EMS agency creates an exclusive operating area for services consistent with those described in § 1797.85, the agency's action will not be subject to federal antitrust laws. *See Mercy–Peninsula,* 791 F.2d at 758.

The Sonoma County Board of Supervisors enacted two ordinances that authorized the creation of exclusive operating areas in Sonoma County and designated the Sonoma County Public Health Department to serve as the local Emergency Medical Services Agency ("the Agency"). The ordinances authorized the Agency to create an exclusive operating area in which all three types of services specified in § 1797.85 of the EMS Act are offered: emergency ambulance services, advanced life support ("ALS") and limited ALS. Advanced life support incorporates various techniques for emergency medical care including cardiopulmonary resuscitation, cardiac defibrillation and intravenous therapy. *See* Cal. Health & Safety Code § 1797.52. Basic life support, which Redwood contends is not covered by § 1797.85, is a subset of ALS comprising emergency first aid and cardiopulmonary resuscitation. *See id.* § 1797.60. Limited ALS consists of techniques exceeding basic life support, but less than ALS. *See id.* § 1797.92. Sonoma County's ordinance required that all ambulances within the exclusive operating area provide a limited ALS service.

The County adopted an "exclusive franchise zone" covering a portion of Sonoma County in which only one provider would be allowed to provide ambulance services. In accordance with the EMS Act and the County's ordinances, the Agency initiated a competitive bidding process for the se-

---

1. The material portions of the EMS Act provide as follows:

    A local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan.

   Cal. Health & Safety Code § 1797.224.

   "Exclusive operating area" means an EMS area or subarea defined by the emergency medical services plan for which a local EMS agency, upon the recommendation of a county, restricts operations to one or more emergency ambulance services or providers of limited advanced life support or advanced life support.

   *Id.* § 1797.85.

lection of the exclusive ambulance services provider for this zone. The County awarded the contract to Sonoma Life Support. Plaintiff Redwood, which had previously provided emergency and non-emergency services in the county, was an unsuccessful bidder.

Following the contract award to Sonoma Life Support, the County notified Redwood that it could not continue to provide ambulance services in the exclusive operating area. Furthermore, the County denied Redwood's request for a permit to provide "non-emergency ambulance services" because the County's ordinances authorized the issuance of ambulance permits to operators of emergency ambulances that respond to 911 calls. In the exclusive operating area, only Sonoma Life Support was entitled to an emergency ambulance permit. Consequently, the County informed Redwood that it could operate "non-emergency vehicles," such as "gurney cars and wheelchair vans" within the exclusive operating area. These vehicles are not routinely equipped with the medical equipment and personnel required for the specialized care offered by ambulances. See Cal.Code Regs. tit. 22, §§ 51151.3, 51151.5 (defining "litter van" (similar to a gurney car) and "wheelchair van" for the purposes of Medi–Cal program).

## B. Procedural History of this Litigation

In 1991, Redwood filed suit against Sonoma County and Sonoma Life Support, alleging that the County's exclusive contract with Sonoma Life Support is not immune from federal antitrust laws insofar as it purports to grant an exclusive franchise in non-emergency interfacility transfers. Non-emergency interfacility transfers involve the transportation of a patient from one health care facility, such as a hospital or nursing home, to another. The district court issued a preliminary injunction precluding the County from implementing the contract as to "nonemergency medical transportation as defined in Title 22 § 51151.7 of the California Code of Regulations." The preliminary injunction was affirmed by this court in an unpublished disposition.

After a trial, the district court dismissed Redwood's antitrust claims by relying on this court's decision in *A–1 Ambulance Service, Inc. v. County of Monterey,* 90 F.3d 333 (9th Cir.1996). In *A–1 Ambulance,* we held that an exclusive provider of ALS ambulance services can engage in non-emergency interfacility transportation, even though ALS services typically are used for emergency responses. Following the reasoning of *A–1 Ambulance,* the district court concluded that the exemption from the antitrust laws covered Sonoma County's contract with Sonoma Life Support, including the provision of non-emergency transportation, because all of that company's ambulances are required to provide an advanced life support level of service.

Redwood filed a motion to amend the district court's judgment on the antitrust issue. Pointing to Footnote 1 of the *A–1 Ambulance* opinion, Redwood argued that the district court had failed to consider that Sonoma County's exclusive operating area also incorporates BLS ambulance services. Footnote 1 states that:

Nothing in this opinion should be read to imply that EMS agencies may establish exclusive operating areas for basic life support ambulance service.

*A–1 Ambulance,* 90 F.3d at 335 n. 1.

The district court requested the parties to brief whether Sonoma County had created an exclusive operating area for "basic life support ambulance service" as that term is used in *A–1 Ambulance.* The district court then granted Redwood's motion and issued a permanent injunction against the County prohibiting enforcement of the contract with Sonoma Life Support to the extent that the contract prevents Redwood from providing "non-emergency ambulance services at a basic life support level of service."

The district court awarded Redwood its costs of suit and attorney's fees in the amount of $47,243.25 under 15 U.S.C. § 26.

## ANALYSIS

### I.

█ Section 1 of the Sherman Act declares that every contract "in restraint of trade" is illegal. *See* 15 U.S.C. § 1. This law applies to local governments. *See City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 408, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). If the County's contract granting a monopoly to Sonoma Life Support for ambulance services in central Sonoma County is subject to § 1 of the Sherman Act, it is an illegal restraint of trade. But the contract is not subject to the Sherman Act if it is authorized by state law and hence protected by state action immunity, a doctrine first recognized in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

█ Under the state action immunity doctrine, a local government may restrict trade without violating the antitrust laws if the state has "clearly articulated" and affirmatively expressed its intention to allow the municipality to replace competition with regulation or monopoly power. *A–1 Ambulance,* 90 F.3d at 336 (citing *City of Columbia v. Omni Outdoor Advertising,* 499 U.S. 365, 372, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991)). This court previously has held that California has "clearly articulated" its intention to grant state action immunity to local governments that implement emergency medical services plans that are consistent with the terms of the EMS Act. *See Mercy–Peninsula,* 791 F.2d at 758; *see also* Cal. Health & Safety Code § 1797.6(b). Therefore, so long as the County's contract with Sonoma Life Support establishes an exclusive operating area for services contemplated by the EMS Act, it is immune from federal antitrust laws. Because the district court's decision to grant an injunction relies on the interpretation of a state statute, we review de novo. *A–1 Ambulance,* 90 F.3d at 335.

Sonoma County argues that its exclusive operating area falls squarely within the EMS Act because the Act authorizes a single provider to offer ALS and emergency ambulance services. Redwood responds that the County's ALS requirement effectively prohibits providers other than Sonoma Life Support from offering non-emergency BLS ambulance service in the exclusive operating area because ALS subsumes a BLS level of service. Redwood asserts that this monopoly in BLS ambulance services is not immune from the antitrust laws because the EMS Act covers only emergency services and services provided at an ALS level.

Relying upon this court's reservation in Footnote 1 of the *A–1 Ambulance* opinion, the district court agreed with Redwood's reasoning. Yet, *A–1 Ambulance* did not decide as a matter of law that a monopoly in non-emergency BLS ambulance services would fall outside the immunity provisions of the EMS Act. Footnote 1 explains only that the court had no need to consider the propriety of exclusive operating areas for BLS ambulance services. *A–1 Ambulance,* 90 F.3d at 335 n. 1. The issue was left unresolved by the *A–1 Ambulance* court. It is essentially an issue of state statutory interpretation.

After the district court issued the permanent injunction in this case, the California Court of Appeal decided *Schaefer's Ambulance Service v. County of San Bernardino,* 68 Cal.App.4th 581, 80 Cal. Rptr.2d 385 (Ct.App.1998). Interpreting the EMS Act, *Schaefer's* held that a county can establish an exclusive operating area for "emergency ambulance services" that "encompasses all services rendered by emergency ambulances." *Id.* at 390. It did not limit the scope of the statute to the provision of advanced life support services.

*Schaefer's* involved an ambulance company that provided non-emergency interfacility transfers at a BLS level of service outside of its own exclusive operating area. Schaefer's argued that it was entitled to perform these transfers because in its view

"all interfacility transfers constitute non-emergency ambulance services," *id.* at 389, and thus fall outside the EMS Act's exclusive operating area scheme. San Bernardino County argued to the contrary, asserting that all interfacility transfers made by an "emergency ambulance," which it defined as an ambulance staffed and equipped to provide at least BLS service, constitute "emergency ambulance services." *Id.* The court agreed with the county, citing with approval our decision in *A–1 Ambulance.* Just as we had there held that ALS refers to the level of service available in an ambulance, not the needs of the patient being transported, the California Court of Appeal held that an "emergency ambulance" is one capable of providing a particular level of service, whether or not the patient is transported in an emergency situation. *Id.* at 390; *see A–1 Ambulance,* 90 F.3d at 336.

The reasoning of the *Schaefer's* decision materially undercuts Redwood's position here. First, *Schaefer's* concluded that "emergency ambulances" can perform non-emergency interfacility transfers within an exclusive operating area under the EMS Act. Second, noting that the EMS Act does not define "emergency ambulance services," *Schaefer's* implicitly accepted that an "emergency ambulance" provides at least a BLS level of service. Therefore, the court held that a county can establish an exclusive operating area within which the exclusive operator provides non-emergency BLS ambulance services.

In addition, the *Schaefer's* court agreed with policy arguments similar to those offered by Sonoma County in support of its position here. The court observed that the EMS Act contemplates a regulatory "deal" in which an exclusive operator receives protection from competition in profitable, populous areas of a county in exchange for the obligation to serve unprofitable, sparsely populated areas. *See Schaefer's,* 80 Cal.Rptr.2d at 391 (quoting *Valley Med. Transport, Inc. v. Apple Valley Fire Protection Dist.,* 17 Cal.4th 747, 72 Cal.Rptr.2d 647, 952 P.2d 664, 671 (1998)). As part of this deal, the EMS Act permits exclusive operators to perform non-emergency services that provide a stable source of income to offset the less predictable income derived from 911 responses. "If interfacility transfers were deemed nonemergency ambulance services, outside providers could invade an exclusive operating area and 'cherry-pick' this income." *Id.* The court concluded that the California Legislature drafted the EMS Act to serve as a prophylactic measure against such "cherry-picking" by permitting "emergency ambulances" and providers of ALS to perform non-emergency interfacility transfers.

The *Schaefer's* court also adopted the argument, advanced here by Sonoma County, that carving out interfacility transfers from an exclusive operating area "would pose serious enforcement problems." *Id.* The court observed that allowing non-exclusive operators to provide ambulance services in non-emergency situations would require a particularized evaluation of a patient's medical needs before each ambulance run. The court reasoned that the Legislature wanted to avoid this undesirable result and thus authorized that the scope of an exclusive operating area depend on the "nature of the ambulance providing the services." *Id.*

■ Applying the principles of *A–1 Ambulance* and *Schaefer's,* we conclude that Sonoma County's ordinances and its contract with Sonoma Life Support are protected by state action immunity. Because Sonoma Life Support provides ALS service, it is entitled to exclusively perform non-emergency interfacility transfers at an ALS level of service under our decision in *A–1 Ambulance.* Moreover, because Sonoma Life Support provides "emergency ambulance services," it is entitled to exclusively perform non-emergency interfacility transfers requiring an emergency ambulance, which encompasses a BLS level of service, under the decision in *Schaefer's.* Accordingly, we vacate the district court's injunction because the County has permis-

sibly established an exclusive operating area for all "emergency ambulance services."

## II.

■ Redwood alternatively contends that even if the California courts have disagreed with its interpretation of state law, we are not bound by state law in determining the scope of state action immunity. Redwood relies on this court's decision in *Columbia Steel Casting Co. v. Portland General Electric Co.,* 111 F.3d 1427 (9th Cir.1997), where we held that a state public utility commission failed to confer state action immunity on two private utilities that attempted to allocate service territories in Portland, Oregon, because the commission did not clearly express its intent to create exclusive operating areas or to displace competition between the companies. *Id.* at 1436–37. In *Columbia Steel,* we concluded that the commission's approval of an exchange of properties between the two utilities did not satisfy the threshold test for state action immunity established in *Parker.* Here, in contrast, we find in the EMS Act a clearly expressed state policy to create exclusive operating areas for emergency ambulance services. *See* Cal. Health & Safety Code §§ 1797.6, 1797.85.

Redwood also contends that the EMS Act does not clearly articulate an intent to confer state action immunity on exclusive operating areas for non-emergency BLS ambulance services. Redwood reasons that § 1797.85 does not expressly include basic life support services, but refers only to "emergency ambulance services" and "providers of advanced life support." Redwood's argument is foreclosed by the Supreme Court's decision in *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). In *Town of Hallie,* the Court held that a state legislature need not explicitly authorize a municipality to engage in anticompetitive conduct to confer antitrust immunity. Rather, the state legislature satisfies the "clear articulation" requirement when the logical and foreseeable result of a statute is to displace competition either with regulation or monopoly. *Id.* at 42–43, 105 S.Ct. 1713. Relying on *Town of Hallie,* this court has concluded that "[v]irtually any anti-competitive effect . . . would appear to be well within" the EMS Act's contemplation. *Mercy–Peninsula,* 791 F.2d at 758. We also have recognized that the EMS Act has the foreseeable effect of excluding some providers from a local EMS system. *See id.*

■ Finally, Redwood argues that the panel should affirm the injunction because the County's Board of Supervisors, not the EMS agency, created the exclusive operating area. *See Memorial Hosp. Ass'n v. Randol,* 38 Cal.App.4th 1300, 45 Cal. Rptr.2d 547 (1995). The County points out that Redwood raised this issue for the first time on appeal and therefore we should not consider it. The *A–1 Ambulance* court was presented with the same claim. We noted that "as it appears not to be a purely legal issue," we would not consider the issue on appeal when it was abandoned by plaintiff at trial. *A–1 Ambulance,* 90 F.3d at 337 n. 3. Sonoma County argues that it established the exclusive operating area by adopting the recommendation of the EMS agency, a method it contends is permissible under *Randol.* Because the County has demonstrated that this issue turns on the resolution of disputed facts, we do not reach it.

Because Redwood is no longer the "prevailing party," we vacate the district court's award of costs and fees to Redwood in the amount of $47,243.25. *See* 15 U.S.C. § 26; Fed.R.Civ.P. 54(d).

The judgment is REVERSED AND INJUNCTION VACATED.